UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

ATTILA BIBER and SANDRA LEVY,
INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED,

           Plaintiffs,

                                                Trial by Jury
                                                Demanded

v.                                                   Civil Action No. _____

GENERAL REVENUE CORPORATION,

           Defendant.

                                                February 16, 2017

**Class Action Complaint for Violations of the Fair Debt Collection Practices Act**

### I. Introduction

1.     Attila Biber and Sandra Levy bring this suit on behalf of themselves and all those similarly situated against General Revenue Corporation, a debt collector, on account of their misrepresentation of and non-compliance with federal student-loan law as described more fully below in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*.

### II. Jurisdiction

2.     Jurisdiction in this Court is proper under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3.     This Court has jurisdiction over the defendant and venue in this Court is proper, because the acts complained of occurred in this state and because the Plaintiffs and the Class Members are residents of Virginia.

### III. Parties

4. Attila Biber is a natural person residing in Fairfax, Virginia.

5. Sandra Levy is a natural person residing in Vienna, Virginia.

6. The defendant General Revenue Corporation ("GRC") is an Ohio Corporation headquartered in Mason, Ohio and is engaged in the collection of consumer debts. The Defendant uses instrumentalities of interstate commerce in the collection of debts. It regularly collects debts from consumers located across the Commonwealth of Virginia. At all times relevant hereto, Defendant was a "debt collector" as that term is defined by the FDCPA.

### IV. Factual Allegations

7. Plaintiff Biber is a "consumer" as that term is defined by FDCPA § 1692a(3).

8. Plaintiff Biber was a debtor with federal student loans that were placed into default status.

9. Plaintiff Biber's federal student loans were "debts" as that term is defined by the FDCPA.

10. Plaintiff Levy is a "consumer" as that term is defined by FDCPA § 1692a(3).

11. Plaintiff Levy was a debtor with federal student loans that were placed into default status.

12. Plaintiff Levy's federal student loans were "debts" as that term is defined by the FDCPA.

13. The Plaintiffs' loans were assigned to GRC for collection purposes.

14. Under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30, prior to initiating wage garnishment of student loans, GRC is required to send a notice of proposed garnishment, said notice to include an explanation of the debtor's rights, including, but not limited to, those rights

found at 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30. Those rights include the right to inspect and copy records related to the debt, to enter into a written repayment agreement to repay the debt, and to demand a hearing in accordance with 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30 related to the debt.

    15.    The rights about which notice should be given were, until recently, concisely summarized in bullet-point format on the website for the Department of Education, on a page entitled "Administrative Wage Garnishment," https://www.myeddebt.ed.gov/borrower.wageGarnishmentNavigate.action, as follows:

**The Borrower's Rights and Responsbilities**

> The borrower has the right to:
>
>> --Be sent a notice 30 days prior to the Department ordering wage garnishment that explains the Department's intention to garnish, the nature and amount of the debt, an opportunity to inspect and copy records relating to the debt, object to garnishment to collect the debt, and avoid garnishment by voluntary repayment;
>>     --An opportunity to enter into a written agreement under terms agreeable to the Department to establish a voluntary repayment agreement;
>>
>> --An opportunity for a hearing to present and obtain a ruling on any objection by the borrower to the existence, amount, or enforceability of the debt;
>>
>> --An opportunity for a hearing to present and obtain a ruling on any objection that garnishment of 15% of the borrower's disposable pay would produce an extreme financial hardship;
>>
>> --An opportunity for a hearing to present and obtain a ruling on any objection that garnishment cannot be used at this time because the borrower is now employed within a 12-month period after having been involuntarily separated from employment;

--Having garnishment action withheld by filing a timely request for a hearing, until the hearing is completed and a decision issued;

--Not to be discharged from employment, refused employment, or subject to disciplinary action due to the garnishment, and to seek redress in federal or state court if such action occurs; and

--Not to have any information provided to the employer but what is necessary for the employer to comply with the withholding order.

To avoid garnishment of 15% of disposable pay, the borrower must:

--Negotiate repayment terms acceptable to the Department or the Private Collection Agency (PCA) and ensure that the Department receives the first payment by the response deadline date on the garnishment notice, which is 30 days from the date the garnishment notice was sent;

--Make a hearing request in writing postmarked no later than the deadline on the garnishment notice;

--If requesting copies of documents, make a request for a hearing, because requesting document(s) does not delay a garnishment order;

--Provide proof to support any objection made to the existence, amount, or enforceability of the debt, or a claim of legal exclusion or financial hardship;

--Pay any expenses he or she incurs to obtain legal representation and to attend an in-person hearing; (All in-person hearings are held at one of the three regional offices: Atlanta, Chicago, or San Francisco. The borrower is responsible for the cost of attending and those of any witnesses to attend on their behalf.) and

--Initiate any legal action against his or her employer if the employer discharges, refuses to hire, or takes disciplinary action against the borrower based on the garnishment action.

16. A copy of the web-page is attached to this Complaint as <u>Exhibit C</u>.

17. Prior to initiating wage withholding to collect on delinquent student loan payments, GRC sends letters to Plaintiffs and Class Members. Copies of the letters sent to Plaintiff Biber and Plaintiff Levy are attached hereto as Exhibits A and B, respectively, and are referred to as Letters A and B.

18. GRC sent Letter A to Biber on or about January 3, 2017

19. Biber received Letter A shortly thereafter.

20. Biber read Letter A shortly after receiving it.

21. GRC sent Letter B to Waters-Levy on or about March 11, 2016.

22. Levy received Letter B shortly thereafter.

23. Levy read Letter B shortly after receiving it.

24. In describing the wage garnishment process, Letters A and B state:

> This may be your last opportunity to make satisfactory payment arrangements on your student loan(s). If these arrangements are not made, we will begin or continue the process of verifying your employment for Administrative Wage Garnishment...

25. In Letters A and B, GRC fails to provide the notice of rights under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30.

26. In the alternative, if Letters A and B are not final notices provided to consumers prior to initiating wage garnishment, they falsely and deceptively imply that they are in order to create a false sense of urgency.

27. The notices provided in 20 U.S.C. §1095a and 34 C.F.R. §§34.1-30 are required as they help consumers determine whether a debt is legitimate, whether the debt is the consumer's, and whether the debt is for the correct amount. In addition these notices are required as they ensure that the student loan borrower is aware that the debt collector cannot just act

unilaterally without any independent oversight -- the borrower is entitled, if they disagree with the claim, to an administrative hearing to determine the validity and amount of any claim.

28. Instead of providing these important and necessary notices of the safeguards the student loan borrower has against improper claims, the dunning letters sent by defendant lead the student loan borrower to believe that the validity and amount of the debt is a *fait accompli*, and that the student loan borrower has no viable alternative to either paying the debt or having their wages garnished.

29. By failing to effectively convey to Plaintiffs their rights under the FDCPA, Defendant has harmed Plaintiffs and the class members.

30. The purpose and effect of Letters A and B is to mimic the 30-day notice form statutorily required before commencing administrative wage garnishment, in order to mislead, deceive, and scare consumers into believing that wage-garnishment in imminent.

31. The purpose and effect of using Letters A and B – entitled "ADMINISTRATIVE WAGE GARNISHMENT PROCEEDINGS NOTICE" – instead of using a letter that contains all of the warnings, notices, and forms required under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34.1-30 – is to mislead consumers into believing that administrative wage-garnishment is imminent without providing any of the notices, warnings or forms – required under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34.1-30 -- that might encourage them to assert their rights to inspect documents or, more importantly, demand a hearing.

32. The acts and omissions of Defendant described above injured Plaintiffs and the class members in a concrete way. As a result of these acts and omissions, Plaintiffs and the class members were subjected to threats and collection attempts from Defendant, which contained material misrepresentations that deceptively and misleadingly concealed from Plaintiffs and the

6

class members pre garnishment notices which Congress put in place to protect and safeguard student loan borrowers, as set forth in 20 U.S.C. §1095a and 34 C.F.R. §§34.1-30, and which provide, among other things, that the student loan borrower has a right to a 30 day notice prior to the garnishment beginning, that the student loan borrower has a right to demand documents supporting the debt, and that the student loan borrower has a right to a hearing prior to a garnishment being initiated. Plaintiffs and the class members were left with the impression that a wage garnishment was imminent, when in fact Defendant had a statutory obligation to provide the notices found in 20 U.S.C. §1095a and 34 C.F.R. §§34.1-30 prior to initiating the wage garnishment. Plaintiffs and the class members were thus deprived of statutory verification rights which they would otherwise have under 20 U.S.C. §1095a and 34 C.F.R. §§34.1-30. In other words, Plaintiffs suffered an informational injury as a result of being deprived of information to which he was legally entitled, and as a result of being supplied misleading information. This injury also created a material risk of financial harm that Congress intended to prevent by enacting the FDCPA – to wit, that Plaintiff, influenced by misleading information, might make payment decisions that he might not have made had he been given only truthful information. And the injury created a material risk of financial harm that Congress intended to prevent by enacting 20 U.S.C. §1095a – to wit, that Plaintiff, faced with imminent non-judicial garnishment, might make payment decisions that he might not have made had he been apprised of all of the rights described in the statutorily required form.

33. The acts and omissions of Defendant described above injured Plaintiffs and the class members in a particularized way, in that GRC was obligated by the FDCPA to supply non-misleading information to Plaintiffs specifically, by virtue of the fact that GRC was attempting to collect a debt from Plaintiff. Moreover, GRC was obligated by 20 U.S.C. §1095a to supply full

information concerning the rights attending nonjudicial wage garnishment, not to the public at large, but to Plaintiffs specifically, as a condition of garnishing his wages.

34. The debts that Defendant sought to collect from Plaintiffs were originally incurred for personal, family, or household purposes.

### V. Class Allegations

35. Plaintiffs restate, reallege, and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

36. Under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as follows:

> All natural persons who are residents of Virginia who are similarly situated to the Plaintiffs in that, within one year of the commencement of this action and continuing to the date that an order is entered certifying this class, GRC sent them a letter in a form substantially similar or materially identical to either Exhibit A or Exhibit B.

37. The proposed Class is so numerous that joinder of all members would be impracticable. Plaintiffs do not know the size of the class, although this information is known by the defendant and is readily ascertainable in discovery. Based upon information readily available concerning the defendant, the size of its operation, and its specialization in the collection of student loans, Plaintiffs estimates and accordingly alleges that there are hundreds and, in all probability, thousands of individuals in the class.

38. There is a community of interest among the members of the proposed Class in that there are questions of law and fact common to the proposed Class that predominate over questions affecting only individual members.

39. Plaintiffs' claims are typical of those of the Class that she seeks to represent. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class.

40. Plaintiffs are represented by counsel competent and experienced in both consumer protection specific to student loans, and class action litigation, and she has no conflicts with the members of the Class.

41. The common questions of law and fact predominate over any individual questions, in that the letters are form letters, and any individual questions are subordinate to the common questions of whether GRC violated the FDCPA by misrepresenting the class members' rights under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30.

42. A class action is superior to other methods for the fair and efficient adjudication of the controversy. Because the damages suffered by individual class members are relatively small compared to the expense and burden of litigation, it would be impractical and economically unfeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible or likely, would create a risk of inconsistent or varying adjudications with respect to the claims asserted by individual class members and could create incompatible standards of conduct for the defendants. Moreover, because most class members are unaware of their rights under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30 to inspect and copy records related to the debt, to enter into a written repayment agreement to repay the debt, and to demand a hearing in accordance with 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30 related to the debt, they are unlikely to bring an independent action, and a class action is the only way that these violations can be rectified.

43.     Injunctive relief is appropriate for the Class, under Fed. R. Civ. P. 23(b)(2). Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members.

## VI. Claims for Relief
### First Cause of Action B
### Claims for Violations of 15 U.S.C. § 1692, *et seq.*

44.     Plaintiffs restate, reallege, and incorporate herein by reference all foregoing paragraphs as if set forth fully in this Count.

45.     GRC violated the FDCPA by falsely representing that it was going to perform an Administrative Wage Garnishment, without first providing the notices required by 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30. In the alternative, GRC falsely implied that the Administrative Wage Garnishment Proceedings Notice was the Notice of Proposed Garnishment required under 20 U.S.C. § 1095a and 34 C.F.R. §§ 34:1-30.

46.     In other words, GRC violated the FDCPA as follows:

    A.     GRC falsely represented that it was going to perform an Administrative Wage Garnishment, without first providing the notices required by 20 U.S.C. § 1095a and 34 C.F.R. §§ 34.1-30;

    B.     GRC falsely implied that the Letters were the Notices of Proposed Garnishment required under federal law;

    C.     GRC falsely represented that it had the authority to garnish wages at the time of the letter, if payment arrangements were not made at that time;

    D.     GRC falsely represented the character, amount or legal status of Plaintiffs' debts; and

    E.     GRC used unfair and unconscionable means to collect and attempt to collect from Plaintiff and the class members.

47.     GRC's violations in turn violate specific enumerated sections of the FDCPA, as

follows:

    A.    It falsely represented a it had the authority to garnish wages at the time of the letter, if payment arrangements were not made at that time, in violation of 15 U.S.C. § 1692e, 1692e(4), 1692e(5) and 1692e(10).

    B.    It falsely represented the character, amount or legal status of the debts, in violation of 15 U.S.C. § 1692e, 1692 e(2)(A) and § 1692e(10).

    C.    It used unfair and unconscionable means to collect and attempt to collect from Plaintiffs and the class members, in violation of 15 U.S.C. § 1692f.

48.    Plaintiffs have suffered concrete, particularized harms to legally protected interests because GRC's false, deceptive, and misleading representations, as set forth above, could detrimentally affect Plaintiffs' decision-making with respect to their alleged debts.

49.    Under 15 U.S.C. § 1692k, GRC is liable to the Plaintiffs and the Class Members to whom it sent the letter.

WHEREFORE, the Plaintiffs seek on behalf of themselves and the class members, class certification and statutory damages, actual damages, declaratory relief, and a reasonable attorney's fee, and costs, and such other relief the Court deems appropriate.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS AND ALL ISSUES**

    PLAINTIFFS, Attila Biber and
    Sandra Levy,
    Individually And On Behalf Of The Class,

    /s/ Thomas R. Breeden
    Thomas R. Breeden, Virginia Bar No. 33410
    Thomas R. Breeden, P.C.
    10326 Lomond Drive
    Manassas, VA 20109
    Tel: (703) 361-9277
    Fax: (703) 257-2259
    Email: trb@tbreedenlaw.com

        Dale W. Pittman, Virginia Bar No. 15673
        THE LAW OFFICE OF DALE W. PITMAN, P.C.
        The Eliza Spotswood House
        112-A West Tabb Street
        Petersburg VA 23803
        Tel: (804) 861-6000
        Fax: (804) 861-3368
        Email: dale@pitmanlawoffice.com

        Brian L. Bromberg
        Jonathan R. Miller
        Bromberg Law Office, P.C.
        26 Broadway, 21st Floor
        New York, NY 10004
        Tel: (212) 248-7906
        Fax: (212) 248-7908
        Email: brian@bromberglawoffice.com
        Email: jonathan@bromberglawoffice.com
        (Pro Hac Vice to be filed)